# Illinois Official Reports

## Supreme Court

*People v. Custer*, 2019 IL 123339

| | |
|---|---|
| Caption in Supreme Court: | THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. JOHN MICHAEL CUSTER, Appellee. |
| Docket No. | 123339 |
| Filed | September 19, 2019 |
| Decision Under Review | Appeal from the Appellate Court for the Third District; heard in that court on appeal from the Circuit Court of Peoria County, the Hon. Albert Purham, Judge, presiding. |
| Judgment | Appellate court judgment reversed. Cause remanded. |
| Counsel on Appeal | Lisa Madigan, Attorney General, of Springfield (David L. Franklin, Solicitor General, and Michael M. Glick and Michael L. Cebula, Assistant Attorneys General, of Chicago, of counsel), for the People. |
| | James E. Chadd, State Appellate Defender, Peter A. Carusona, Deputy Defender, and Steven Varel, Assistant Appellate Defender, of the Office of the State Appellate Defender, of Ottawa, for appellee. |

JUSTICE KILBRIDE delivered the judgment of the court, with opinion.

Chief Justice Karmeier and Justices Thomas, Garman, Burke, Theis, and Neville concurred in the judgment and opinion.

**OPINION**

¶ 1       In this appeal, we are asked to extend the procedures we established in *People v. Krankel*, 102 Ill. 2d 181 (1984), and its progeny to protect a *pro se* criminal defendant's sixth amendment right to effective assistance of trial counsel to similar claims of unreasonable assistance by postconviction counsel in purely statutory proceedings commenced under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2010)). After weighing the potential effects, both positive and negative, of expanding our application of *Krankel*, we decline that invitation.

¶ 2                                I. BACKGROUND

¶ 3       Petitioner John Michael Custer had already been convicted of numerous criminal offenses, both felonies and misdemeanors, when the State filed the instant charges.[1] We now address, however, only the facts needed for a complete understanding of this appeal.

¶ 4       In 2010, petitioner was charged in the circuit court of Peoria County with unlawful possession of a controlled substance; he entered an open guilty plea the next year. After accepting the plea, the trial court continued the case for sentencing. Prior to the sentencing hearing, however, petitioner was arrested again after two other incidents: (1) an attack on a police officer who was responding to a report that petitioner was assaulting a female in her home and (2) possession of a knife while threatening a man and a woman at a bar. Based on those incidents, petitioner was charged with unlawful possession of a weapon by a felon, aggravated assault, unlawful use of a weapon, and aggravated battery. Petitioner subsequently failed to return for sentencing in his 2010 drug case, and a warrant was issued for his arrest.

¶ 5       Petitioner was eventually apprehended and appeared for sentencing in his drug case. Based on his multiple felony and misdemeanor convictions, many involving "crimes of violence," the State requested the maximum sentence of six years in prison. The State also noted that petitioner was the subject of "a multitude" of protective orders sought by a number of different women. The trial court sentenced petitioner to six years' imprisonment.

¶ 6       Nine months later, in July 2013, petitioner entered a negotiated guilty plea to the charges of aggravated battery of a police officer and unlawful possession of a weapon stemming from the arrests during the pendency of his 2010 drug case. In exchange, the State recommended consecutive sentences of 4½ years and 5 years in prison, respectively, and agreed to dismiss

---

[1] The order denying petitioner's postconviction petition indicates one of his presentence investigation reports revealed that his prior criminal record includes 9 felony convictions, 10 criminal misdemeanor convictions, 10 Class A traffic convictions, and 7 orders of protection entered against him.

the remaining charges. The trial court accepted the pleas and imposed the agreed-upon sentences.

¶ 7    In May 2014, petitioner filed a *pro se* postconviction petition, alleging that his private counsel in the 2010 drug case, Clyde Hendricks, was ineffective for failing to appeal or move to withdraw his guilty plea as petitioner requested. Petitioner's filing advanced to a second-stage proceeding, and attorney Sam Snyder was appointed as his postconviction counsel. Snyder filed a supplemental postconviction petition, supporting the *pro se* allegations with four affidavits from petitioner claiming that both he and his girlfriend (Michelle Colvin) had asked attorney Hendricks to appeal petitioner's drug conviction and sentence. Hendricks allegedly told them he would "take care of what needed to be done and for [petitioner] not to worry." The petition also asserted that Hendricks failed to follow petitioner's instruction to file a motion to withdraw his plea. Based on that showing, the trial court advanced the postconviction petition to a third-stage evidentiary hearing.

¶ 8    Prior to that hearing, Colvin sent the trial court a letter stating that (1) she knew petitioner was "not an innocent man," (2) she helped him agree to plead guilty, (3) trial counsel Hendricks told her he was filing an appeal for petitioner, and (4) postconviction counsel Snyder "refused" to take her statement. Attorney Snyder also sent petitioner a letter stating that (1) Snyder had spoken to Colvin, (2) Colvin was "rude and disrespectful" to Snyder and his staff, and (3) Snyder would not be calling Colvin to testify at the evidentiary hearing because he did not believe her testimony would be helpful.

¶ 9    At the evidentiary hearing, petitioner testified that trial counsel Hendricks advised him that he would likely be sentenced to probation or three years in prison if he pled guilty to the drug charge. After instead receiving a six-year sentence, petitioner asked Hendricks to appeal. About a month later, Hendricks told petitioner he did not file an appeal because he found no viable appellate issues. Petitioner further testified that he asked Hendricks to file a motion to withdraw his plea and that his girlfriend Colvin also asked Hendricks to appeal.

¶ 10    In his testimony at the evidentiary hearing, Hendricks acknowledged telling petitioner he had a "good chance" of receiving no more than four years in prison based on the small amount of cocaine at issue. Hendricks explained to petitioner that entering an open plea would make it difficult to challenge any sentence that fell within the proper sentencing range. While Hendricks expressed surprise when petitioner was given the maximum sentence, he reiterated that the sentence was within the trial court's discretion. He denied any claim that petitioner expressed a desire to appeal or withdraw his plea, stating he would have filed for both if petitioner had asked.

¶ 11    The trial court took the amended postconviction petition under consideration. Before an order was entered, however, petitioner sent the judge a letter claiming that postconviction counsel Snyder failed to provide him with adequate representation by refusing to call Colvin as a witness at the evidentiary hearing. Petitioner also filed a *pro se* motion to "reconsider" the trial court's ruling on his amended postconviction petition even though no ruling had yet been entered.

¶ 12    The trial court denied the amended postconviction petition and declined to address petitioner's *pro se* motion to "reconsider" because he was still represented by counsel (Snyder). The court's written order included express credibility findings: "The court finds [petitioner's] testimony to be totally unbelievable. In addition to his manner while testifying

the court finds [petitioner's] testimony and claims are clearly contradicted by the facts and circumstances set forth in the record." Conversely, the court found petitioner's trial counsel, Hendricks, "to be very believable."

¶ 13 Petitioner appealed, represented by the Office of the State Appellate Defender. Despite being represented by counsel, petitioner filed a *pro se* motion to dismiss the appeal and asked the appellate court to "order the circuit court to rule on [his] motion for reconsideration." Petitioner again alleged that postconviction counsel Snyder erred by failing to call Colvin to testify at the evidentiary hearing. The State did not object to petitioner's filing, and the appellate court dismissed the appeal, remanding for a ruling on his *pro se* motion to reconsider.

¶ 14 On remand, the trial court held a hearing on the motion to reconsider. Petitioner was not present, but postconviction counsel Snyder was in attendance. At the hearing, the State asserted that the motion did not really request "reconsideration" because petitioner did not claim the denial of his postconviction petition was error. Because petitioner asserted no new claims, the State relied on the arguments it made during the second-stage proceedings, along with the rationale in the trial court's order. It also asserted that petitioner's motion did not allege any valid grounds for reconsideration: a change in the law, newly discovered evidence, or the court's misapplication of the law. When given the opportunity to respond, postconviction counsel Snyder simply stated that the *pro se* motion "speaks for itself" and that he stood "on what [petitioner] already filed." The trial court immediately denied petitioner's motion to reconsider.

¶ 15 Petitioner then filed a second postconviction appeal, arguing the trial court erred in denying his reconsideration request without first conducting a *Krankel* hearing. Although the appellate court acknowledged that *Krankel* has never been extended to postconviction proceedings, it remanded the cause to the trial court for it "to conduct a *Krankel*-like inquiry into [petitioner's] *pro se* claim of unreasonable assistance of postconviction counsel." 2018 IL App (3d) 160202, ¶¶ 25, 31. The State filed a petition for leave to appeal that order under Illinois Supreme Court Rule 315(a) (eff. Apr. 1, 2018). We allowed that petition.

## II. ANALYSIS

¶ 17 The question before us is whether the holding in *Krankel*, mandating a preliminary inquiry into the factual basis for a defendant's *pro se* claim that trial counsel provided ineffective assistance (*People v. Ayres*, 2017 IL 120071, ¶ 11; *Krankel*, 102 Ill. 2d at 189), should be extended to claims involving postconviction counsel. Before we can address that issue, however, we must consider the State's argument that it is moot and, thus, the appellate decision is subject to vacatur as merely advisory. In response, petitioner asserts that the State has forfeited its mootness claim by not raising it in the appellate court or petition for leave to appeal. Because claims of forfeiture and mootness present questions of law, our review is *de novo*. *People v. Thompson*, 2015 IL 118151, ¶ 25; *In re Alfred H.H.*, 233 Ill. 2d 345, 350 (2009).

## A. Forfeiture

¶ 19 Forfeiture is a limitation on the parties, not the court. In the exercise of our discretion, we may address even forfeited issues. *People v. Gawlak*, 2019 IL 123182, ¶ 26. Here, petitioner argues the State's mootness claim was forfeited. Because reviewing courts generally do not

resolve moot questions or issue advisory opinions simply to provide precedential guidance (*Italia Foods, Inc. v. Sun Tours, Inc.*, 2011 IL 110350, ¶ 41), we choose to consider the mootness claim in this case.

¶ 20                                                  B. Mootness

¶ 21       The State argues that the question of whether to extend *Krankel* to *pro se* claims of unreasonable assistance by postconviction counsel is moot because petitioner has already received the requested relief: a preliminary *Krankel* hearing. Petitioner counters that the hearing on the allegation that postconviction counsel acted unreasonably was "a far cry from the functional equivalent of a *Krankel* inquiry." After reviewing the entire page and a half of transcript documenting the purported *Krankel* hearing, we agree with petitioner.

¶ 22       Petitioner was not in attendance at the hearing to present his motion. Postconviction counsel Snyder, whose alleged conduct was the genesis of that motion, stated, not surprisingly, that petitioner's *pro se* "motion [to reconsider] speaks for itself" and that counsel stood "on what [petitioner] had already filed." Put simply, the cursory hearing conducted by the trial court does not demonstrate that it adequately considered petitioner's *pro se* claim of inadequate representation pursuant to *Krankel*. See *Ayres*, 2017 IL 120071, ¶ 13 (stating that "the goal of any *Krankel* proceeding is to facilitate the trial court's full consideration of a defendant's *pro se* claims"). Necessarily then, we reject the State's contention that petitioner already received the benefit of a preliminary *Krankel* inquiry, making this appeal moot.

¶ 23                    C. Applicability of *Krankel* to Postconviction Counsel

¶ 24       We turn now to the substantive dispute in this appeal: whether *Krankel* should apply to postconviction proceedings. More specifically, we must decide whether petitioner is entitled to a preliminary *Krankel* inquiry on his *pro se* claim that postconviction counsel Snyder provided him with unreasonable assistance.

¶ 25       Our opinion in *Krankel* has evolved into a familiar common-law procedure in Illinois trial courts (*Ayres*, 2017 IL 120071, ¶¶ 11-13) that continues to provide a means for defendants to assert posttrial claims that *trial* counsel provided ineffective assistance. The twist here is that petitioner alleged inadequate representation by appointed postconviction counsel, not by trial counsel, during third-stage postconviction proceedings. Prior to the appellate decision in this case, however, *Krankel* has never been extended to allegations of unreasonable assistance by *postconviction* counsel. Because petitioner's contention that *Krankel* is applicable to his postconviction claim presents a legal question of first impression, we will review it *de novo*. *People v. Taylor*, 237 Ill. 2d 68, 75 (2010).

¶ 26       The procedure outlined in *Krankel* was intended to " 'facilitate the trial court's full consideration of a [petitioner's] *pro se* claims of ineffective assistance of trial counsel and thereby potentially limit issues on appeal.' " *Ayres*, 2017 IL 120071, ¶ 21 (quoting *People v. Jolly*, 2014 IL 117142, ¶ 29). In *Krankel*, the appellate court reversed the defendant's burglary conviction and remanded for a new trial because it believed his constitutional right to effective assistance was violated when his trial counsel did not investigate a possible alibi witness. *Krankel*, 102 Ill. 2d at 184. Unlike the instant case, both parties agreed on appeal that the defendant should have been appointed conflict-free counsel at a posttrial hearing on his *pro se*

claim. Accordingly, we remanded the cause for another hearing on the ineffective assistance claim, this time with assistance from newly appointed counsel. *Krankel*, 102 Ill. 2d at 189.

¶ 27 We recently refined our *Krankel* holding in *Ayres*, another posttrial case. There, we declared that appointment of new counsel was not automatically required in all *Krankel* proceedings. As we clarified, " '[t]he law requires the trial court to conduct some type of inquiry into the underlying factual basis, if any, of a defendant's *pro se* posttrial claim of ineffective assistance of counsel.' " *Ayres*, 2017 IL 120071, ¶ 11 (quoting *People v. Moore*, 207 Ill. 2d 68, 79 (2003)). " ' "[I]f the allegations show possible neglect of the case, new counsel should be appointed." ' " *Ayres*, 2017 IL 120071, ¶ 11 (quoting *Jolly*, 2014 IL 117142, ¶ 29, quoting *Moore*, 207 Ill. 2d at 78). In addition, we recognized that holding a preliminary *Krankel* hearing provided the opportunity to create a proper record for appeal. *Ayres*, 2017 IL 120071, ¶ 13.

¶ 28 Here, petitioner seeks to expand those holdings into the *postconviction* realm, asserting that "[a] *Krankel*-like inquiry into a petitioner's claims of unreasonable assistance of counsel is *** necessary in order to effectuate the intent of the Act." The precise contours of petitioner's proposed inquiry, however, remain largely undefined. Based on the relief requested by petitioner and the parties' arguments, it appears that the "*Krankel*-like inquiry" at issue is the postconviction equivalent of a preliminary *Krankel* hearing "to determine if conflict-free counsel needs to be appointed to represent [the petitioner] at the hearing on his motion to reconsider." Before deciding whether to expand *Krankel*'s judicially created procedures to postconviction counsel, however, we first examine the policies and case law underlying proceedings under the Act (725 ILCS 5/122-1 *et seq.* (West 2010)).

¶ 29 Our legislature expressly adopted the Act to create a mechanism for criminal defendants to make collateral attacks on judgments by claiming a substantial violation of a constitutional right at trial. See 725 ILCS 5/122-1 *et seq.* (West 2010); *People v. Flores*, 153 Ill. 2d 264, 272 (1992). That remedial mechanism is broken down into three distinct procedural stages: (1) review of the postconviction petition for the gist of a constitutional claim; (2) the State's filing of an answer or dismissal motion and the appointment of postconviction counsel on request if the petition is not frivolous or patently without merit; and (3) an evidentiary hearing, followed by the trial court's ruling, if the petition survives the second-stage proceedings. 725 ILCS 5/122-2.1(a)(2), 122-4, 122-5 (West 2010).

¶ 30 Because the sixth amendment right to counsel does not extend to postconviction petitioners, counsel is afforded in collateral proceedings under the Act only as a matter of legislative grace, if at all. *People v. Cotto*, 2016 IL 119006, ¶ 29 (citing *People v. Hardin*, 217 Ill. 2d 289, 299 (2005)). Consequently, criminal defendants seeking relief in postconviction proceedings have no constitutional right to counsel, effective or otherwise. Postconviction petitioners are entitled to only "the level of assistance guaranteed by the Act." *People v. Perkins*, 229 Ill. 2d 34, 42 (2007). The required quantum of assistance has been judicially deemed to be a "reasonable level," a standard that is significantly lower than the one mandated at trial by our state and federal constitutions. *People v. Pendleton*, 223 Ill. 2d 458, 472 (2006).

¶ 31 One rationale supporting that lower standard in postconviction cases is the widely differing statuses of defendants prior to and following conviction. Before and during trial, criminal defendants are presumptively innocent of the charges filed against them; that presumption is stripped away once defendants have been convicted and pursue postconviction relief, generally

- 6 -

after unsuccessfully attempting to obtain relief on direct appeal. *People v. Greer*, 212 Ill. 2d 192, 204 (2004).

¶ 32 Commensurate with the lower reasonable assistance standard mandated in postconviction proceedings, Illinois Supreme Court Rule 651 (eff. July 1, 2017) sharply limits the requisite duties of postconviction counsel. They are required only to certify that they have "consulted with the petitioner by phone, mail, electronic means or in person," "examined the record" as needed to shape the defendant's *pro se* claims, and "made any amendments to the petitions filed *pro se* that are necessary for an adequate presentation" of those claims. Ill. S. Ct. R. 651(c) (eff. July 1, 2017). Those limited duties persist throughout the proceedings under the Act. Postconviction counsel may create a rebuttable presumption that reasonable assistance was provided by filing a Rule 651 certificate. *Perkins*, 229 Ill. 2d at 42, 44. No similar laundry list mandating the basic professional duties required exists for trial counsel. Because the protections to ensure proper assistance by trial and postconviction counsel differ, claims of unreasonable performance by postconviction counsel logically need not be treated the same as claims of ineffective trial counsel for purposes of *Krankel*.

¶ 33 Nonetheless, petitioner argues that a "*Krankel*-like inquiry" is still required to address his claim that postconviction counsel Snyder provided unreasonable assistance under the Act. He relies heavily on this court's unanimous decision in *People v. Johnson*, 2018 IL 122227. He specifically cites our explanation that "the only way to ensure the purpose of the Act is fulfilled, *i.e.*, to ensure that criminal defendants are not deprived of liberty in violation of their constitutional rights, is to provide some means of reviewing attorney performance." *Johnson*, 2018 IL 122227, ¶ 17. While *Johnson* undoubtedly continues to apply when a petitioner asserts that private counsel retained to assist in first-stage postconviction proceedings provided unreasonable assistance, it does not aid petitioner here. The quoted language addresses the unique issue before this court in *Johnson*: the *need* for us to institute "some means of reviewing" postconviction counsel's performance. Here, in contrast, the question is the *means* necessary to conduct that review once it is mandated. Unlike *Johnson*, the question here is the proper scope of *Krankel* proceedings, an issue never analyzed, or even mentioned, in *Johnson*. *Johnson* flatly fails to support petitioner's contention that *Krankel* applies to *pro se* allegations of unreasonable assistance by postconviction counsel.

¶ 34 To support the position that *Krankel* should not be extended to postconviction counsel, the State relies on concerns expressed by the dissenting justices in *Ayres*. *Ayres*, 2017 IL 120071, ¶ 35 (Thomas, J., dissenting, joined by Karmeier, C.J., and Garman, J.). It argues that the extension of *Krankel* would magnify the potential for wasting limited judicial resources and multiply the already heavy strain *Krankel* places on our trial courts without any additional benefits.

¶ 35 The State's argument touches on a useful balancing test for determining whether this court should extend in this case the procedures we put in place in *Krankel* and *Ayres*. If the additional drain on court resources caused by extending *Krankel* is offset by sufficient benefits, the extension is warranted, as the original procedure was in *Krankel*.

¶ 36 Looking first at the adverse impact on judicial resources of expanding *Krankel* to postconviction counsel, the equation is quite simple. Requiring our trial courts to provide additional procedural protections and hearings to postconviction petitioners will, of course, also inevitably require the expenditure of additional resources.

¶ 37 Nonetheless, petitioner also advances policy-based rationales for expanding *Krankel*, arguing that the expansion would reap significant benefits. Petitioner asserts that the interests of judicial economy are promoted by exploring the factual allegations underlying a claim of inadequate assistance in a *Krankel* hearing in both posttrial and postconviction cases by developing the factual record prior to appeal. He adds that *Krankel* inquiries are even more critical in postconviction cases because posttrial defendants who fail to request a *Krankel* hearing may raise their constitutional claims of ineffective assistance under the Act, but the same cannot be said for postconviction petitioners. Since only constitutional violations may be remedied under the Act and the right to postconviction counsel is merely statutory (725 ILCS 5/122-1(a)(1), (f) (West 2014); *Flores*, 153 Ill. 2d at 276-77), petitioner argues that those alleging unreasonable assistance of postconviction counsel under the Act would have "no recourse" if *Krankel* is not extended. As examples of the purported injustice, he cites the inability to seek relief if postconviction counsel fails to advance all the claims in a *pro se* postconviction petition, fails to present supporting evidence, neglects to elicit responses from witnesses that corroborate other testimony, or fails to investigate or call a particular witness, as alleged here.

¶ 38 The flaw in petitioner's argument is that it presupposes a higher standard of professional conduct for postconviction counsel than is imposed by Rule 651(c), the gold standard for postconviction duties. As we have explained, Rule 651(c) requires only that postconviction counsel certify having undertaken the limited actions prescribed. Those requirements do not include bolstering every claim presented in a petitioner's *pro se* postconviction petition, regardless of its legal merit, or presenting each and every witness or shred of evidence the petitioner believes could potentially support his position. See Ill. S. Ct. R. 651(c) (eff. July 1, 2017) (requiring postconviction counsel to certify they have "consulted with petitioner by phone, mail, electronic means or in person," "examined the record" as needed to shape the petitioner's *pro se* claims, and "made any amendments to the petitions filed *pro se* that are necessary for an adequate presentation" of those claims). Notably, petitioner does not cite any case law where an appeal from the rejection of a claim of noncompliance with Rule 651(c) was found to be a patently inadequate remedy, highlighting the inherently hypothetical nature of his assertion.

¶ 39 Petitioner's hypothetical examples are also unpersuasive because the outcome on appeal would be the same both with or without a preliminary *Krankel* hearing. New counsel need not be appointed for a *pro se* postconviction petitioner if the claims raised are either objectively meritless or relate only to alleged errors in trial strategy. See *Taylor*, 237 Ill. 2d at 75 (stating that, "[i]f the court determines the [*Krankel*] claim lacks merit or pertains only to matters of trial strategy, new counsel need not be appointed and the *pro se* motion may be denied"); *People v. Ramey*, 152 Ill. 2d 41, 52 (1992) (declining to find error in the trial court's denial of new counsel because prior counsel's alleged errors "related to trial tactics"). As we recently reiterated, "matters of trial strategy are generally immune from claims of ineffective assistance of counsel." *People v. Dupree*, 2018 IL 122307, ¶ 44. We conclude that many of petitioner's cited examples fall under the heading of "trial strategy," such as counsel's decisions to call and examine witnesses and to present evidence. See *People v. West*, 187 Ill. 2d 418, 432 (1999) (listing examples of decisions deemed to be trial strategy). Errors in trial strategy do not constitute ineffective assistance unless " 'counsel entirely fails to conduct any meaningful adversarial testing' " (*West*, 187 Ill. 2d at 432-33 (quoting *People v. Guest*, 166 Ill. 2d 381,

394 (1995)), a claim petitioner has not made here. Thus, we reject his argument that fairness and judicial economy necessitate the expansion of *Krankel* to claims of unreasonable assistance by postconviction counsel.

¶ 40 Nonetheless, in *Ayres* we noted one other potential benefit of *Krankel* proceedings: to " 'potentially limit issues on appeal.' " *Ayres*, 2017 IL 120071, ¶ 21 (quoting *Jolly*, 2014 IL 117143, ¶ 29). The focus of that goal, however, is far more closely allied with posttrial proceedings than with postconviction ones. While appeals from posttrial motions require review of a myriad of claims, the bases for appeals in postconviction cases are far more limited, encompassing only substantial issues of constitutional proportion that could not have been presented on direct appeal. 725 ILCS 5/122-1(a)(1) (West 2010); *People v. Young*, 2018 IL 122598, ¶ 16. Consequently, the utility of using *Krankel* proceedings to limit issues on appeal is greatly diminished in the postconviction setting, where the potential appealable issues are far fewer in number.

¶ 41 Overall, none of the benefits petitioner cites from extending *Krankel* to allegations that postconviction counsel provided inadequate assistance are as compelling as they were in their original posttrial context. Consequently, the analytical weight of those benefits in postconviction cases is lower than in our original *Krankel* calculus, while the weight of the adverse effects on available resources is necessarily higher.

¶ 42 After comparing the potential positive and negative consequences of extending *Krankel*, we conclude that the increased demand on trial court resources needed to accommodate the additional postconviction claims is not offset by a comparable increase in benefits. In fact, the potential benefits of applying *Krankel* in postconviction cases are significantly lower than they are in the posttrial setting. Employing *Krankel* hearings in postconviction cases simply fails to advance the goals underlying our original creation of that procedure in posttrial proceedings. Without a sufficient policy basis for expanding *Krankel*, we decline petitioner's invitation to extend those proceedings to *pro se* allegations of unreasonable assistance by postconviction counsel.

¶ 43 Our decision not to extend *Krankel* to postconviction counsel is further backed by "society's strong interest in the finality of convictions based on guilty pleas." *People v. Brown*, 2017 IL 121681, ¶ 53 (citing *Lee v. United States*, 582 U.S. ___, ___, 137 S. Ct. 1958, 1967 (2017)). In *Brown*, the defendant alleged his trial counsel provided ineffective assistance by erroneously advising him on the percentage of his prison sentence that would have to be served if he entered a guilty plea. Because he failed to establish a substantial violation of his constitutional right to effective assistance, we upheld the dismissal of his postconviction petition, noting the strong need for finality when a guilty plea is entered. *Brown*, 2017 IL 121681, ¶¶ 53, 55.

¶ 44 Here, petitioner's claim of unreasonable assistance arises solely from legislative grace, without any supporting constitutional foundation. It cannot realistically be said that society's interest in the outcome of the instant appeal is more compelling than it was in *Brown*. Society's interest in finality is just as strong here as it was in *Brown*, adding support to our decision not to expand *Krankel* to postconviction counsel. If the legislature wishes to alter that outcome, of course, it may amend the Act to provide postconviction petitioners, such as Custer, the statutory benefit of *Krankel*-like proceedings.

## III. CONCLUSION

For the reasons stated, we decline petitioner's invitation to extend the posttrial motion procedures we created in *Krankel* to allegations of unreasonable assistance by postconviction counsel. Nonetheless, because the appellate court's resolution of this case did not require it to consider other issues petitioner raised on appeal before it, we remand this cause to that court for its initial consideration of those matters.

Appellate court judgment reversed.

Cause remanded.