2023 IL App (1st) 221180-U

SECOND DIVISION
December 19, 2023

No. 1-22-1180

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 97 CR 06933 |
| | ) | |
| KWANTEY DYSE, | ) | |
| | ) | Honorable Stanley J. Sacks, |
| Defendant-Appellant. | ) | Judge Presiding. |

PRESIDING JUSTICE HOWSE delivered the judgment of the court.
Justices McBride and Ellis concurred in the judgment.

ORDER

¶ 1    *Held*: We affirm the dismissal of defendant's postconviction petition at the second stage. Defendant did not meet the burden of making a substantial showing of a constitutional violation with regard to his claim of ineffective assistance of postconviction counsel based on counsel's alleged failure to retain an expert to provide evidence in support of defendant's postconviction petition.

¶ 2    Defendant Kwantey Dyse was tried by a jury and convicted of first-degree murder. In the same trial, defendant was also convicted on three counts of attempted first-degree murder. He was sentenced to 50 years in prison for the first-degree murder conviction along with consecutive sentences of 25 years in prison for each of the attempted murder convictions, amounting to an

aggregate sentence of 125 years in prison. Defendant filed a postconviction petition alleging that his 125-year sentence violated the proportionate penalties clause of the United States and Illinois Constitutions, particularly because defendant was 19 years old when he committed the crimes. The trial court dismissed defendant's petition at the second stage. On appeal, defendant argues that his postconviction counsel was ineffective for failing to adequately present defendant's postconviction claims, namely by failing to hire an expert to evaluate defendant and by failing to submit evidence relating to how the evolving science on juvenile brain development might have applied to defendant. We affirm the dismissal of defendant's postconviction petition.

¶ 3                                     BACKGROUND

¶ 4      According to the record, on January 19, 1997, defendant approached Cornelius Tetteh, Jerome McCrary, Cedric Williams, and Maurice Washington as they were standing at the corner of 70th Street and Harper Avenue, in Chicago. Defendant told the men he was looking for a girl named "Yolanda." Defendant was wearing attire that made it appear that he was part of the gang that was predominant in the area, the Four Corner Hustlers. Defendant knocked on several doors in the area and apparently could not find the woman he was looking to find. At some point, McCrary directed defendant to a certain house where he might find Yolanda. Defendant knocked on the door of a house where Andrea Harris was visiting a friend. Harris had her nine-year-old daughter with her at the time. Although Harris's friend told defendant that Yolanda did not live there, defendant returned to the house a second time apparently looking for Yolanda. Fearful, Harris left her friend's house with her daughter to return to her own house located near the corner where Tetteh, McCrary, Williams, and Washington were still standing.

¶ 5      While Harris was walking back to her home, she saw defendant standing by a tree just a few feet from the group of men. As Harris began to enter her home with her young daughter, she

heard defendant's pager sound with an alert. Defendant then suddenly pulled out a gun and shot all the men. McCrary, Williams, and Washington also heard defendant's pager go off and, immediately after, defendant began shooting at them.

¶ 6      McCrary was shot in the chest and fell to the ground. When he tried to get up, defendant shot him in the back and the posterior. Williams was shot twice in the back and once in the arm. Washington was shot in the thigh. Washington and Williams escaped into a nearby alley. Tetteh's body was later found in Harris's backyard. Tetteh died from multiple gunshot wounds. McCrary's injuries required chest surgery to stop the bleeding, and McCrary remained in the hospital for 24 days. Washington and Williams both remained in the hospital for one day. The bullets from Williams' back were never removed.

¶ 7      Patrol officers arrived on the scene quickly after the shooting and were told by the witnesses the direction defendant had fled on foot. The officers received a description of defendant's appearance and clothing. The officers found defendant a few blocks away from the scene of the shooting with the attire described by the witnesses, and defendant was in possession of a semi-automatic Glock which was in slide-lock mode meaning it had been fired until empty. The weapon found in defendant's possession was found to be the murder weapon and defendant tested positive for having gunshot residue on his hands. It was also revealed that defendant was not affiliated with the gang that was predominant in the area, but instead was a Gangster Disciple, a rival to the Four Corner Hustlers.

¶ 8      The three men who were shot and wounded testified against defendant at trial. Andrea Harris likewise testified at defendant's trial. Another neighbor, Nora Washington and her sister Debra Washington, also witnessed the shooting, and both sisters testified at defendant's trial. After arresting defendant, the police took defendant back to the scene of the shooting where Nora

and Debra Washington positively identified defendant as the shooter. The sisters identified defendant again in a physical lineup the next morning and then again at trial. Harris positively identified defendant as the offender in a photo array shortly after the shooting and she identified him again at trial. McCrary positively identified defendant in a photo array one day after the shooting and again at trial.

¶ 9     The jury found defendant guilty of first-degree murder and three counts of attempted first-degree murder. At the sentencing hearing, the defense pointed out that defendant grew up without a father and that his mother had a long-standing substance abuse problem. The defense argued that defendant's family issues left a void in his life that he filled by associating with gangs at a very vulnerable time in his life. The defense also highlighted defendant's youth at the time of the offense, he was 19 years old, and requested that defendant be sentenced to the minimum allowable sentence. In allocution, defendant expressed sorrow for what Tetteh's mother and family were going through, and he expressed a hope that the people who were shot in this incident would learn from the situation and stop running around with gangs. He stopped short of explicitly accepting responsibility for the crimes.

¶ 10    In imposing defendant's sentence, the trial judge found "savage brutality" in defendant's actions. The trial judge pointed out that defendant wore attire to give the victims the false impression he was friendly, lulling them into a false sense of security. The trial judge also expressed his belief that there was never a "Yolanda," and defendant was just using his search for the woman as a pretext to get close to the four men at the scene. The trial judge found that the whole sequence of events was planned out and, as soon as defendant's pager went off, defendant began firing the semiautomatic weapon at the men, striking all four of them. Another bullet went through the window of a nearby house where a woman and her young child were present. The

trial judge explained that defendant killed Tetteh and tried his best to kill the other three men. The trial judge noted that it did not enjoy the prospect of having to sentence a young man to the penitentiary for a long time, but the circumstances called for such an outcome. Defendant was sentenced to 50 years in prison for the murder and 25 years in prison for each attempted murder with all the sentences to run consecutively for a total term of 125 years in prison.

¶ 11    Defendant appealed his sentence. Defendant argued on appeal that the trial court erred in imposing consecutive sentences and that the aggregate sentence exceeded the maximum allowable term. We affirmed defendant's sentence on appeal. See *People v. Dyse*, No. 1-98-1448 (Aug. 24, 2001) (unpublished order); *People v. Dyse*, 324 Ill. App. 3d 1130 (2001). Defendant sought leave to appeal from the Illinois Supreme Court, but his petition was denied. See *People v. Dyse*, 197 Ill. 2d 569 (Table) (Dec. 5, 2001). Defendant filed a petition for a writ of *certiorari* from the Supreme Court of the United States which was denied. See *Dyse v. Illinois*, 535 U.S. 1104 (May 28, 2002). Defendant filed a petition for a writ of *habeas corpus* in the Federal District Court for the Northern District of Illinois, arguing that his sentence was constitutionally infirm. The federal district court denied defendant's petition. *Dyse v. Hinsley*, No. 03 C 4147, 2004 WL 2318848, at *3 (N.D. Ill. Oct. 12, 2004).

¶ 12    On March 13, 2020, defendant filed a *pro se* postconviction petition which is the subject of this appeal. In his *pro se* petition, defendant argues that his 125-year sentence violates the United States and Illinois Constitutions. He points out the developments in the law relating to the sentencing of youthful offenders since the time his sentence in this case was rendered. Defendant argues that, at sentencing, the trial court failed to adequately take into account his youth, his life circumstances before and during the time of the crime, and his potential for rehabilitation. Defendant did not attach any evidence to his *pro se* petition.

¶ 13    Defendant's petition was filed just before the worsening of the COVID-19 pandemic and the resulting court closures. The trial court did not rule on defendant's petition at the first stage within the 90-day limit for such a ruling. The trial court, therefore, advanced defendant's petition to the second stage. A public defender was appointed to assist defendant in his second-stage postconviction proceedings. After a handful of court appearances concerning defendant's petition, the assistant public defender assigned to defendant's case filed a certificate under Illinois Supreme Court Rule 651(c) stating that defendant's *pro se* petition adequately set forth the relevant constitutional claim so that a supplemental or amended postconviction petition was not necessary.

"1. I have consulted with the petitioner, Kwantey Dyse, by mail and phone to ascertain his contentions of deprivations of constitutional rights;

2. I have obtained and examined the record (report of proceedings and common law record) from his trial, including sentencing; conducted legal research; and reviewed relevant case law related to petitioner's claims.

3. I have not prepared an amended or supplemental petition for post-conviction relief as the petitioner's previously-filed pro se petition for post-conviction relief adequately sets forth the petitioner's claims of deprivation of his constitutional rights."

¶ 14    The State filed a motion to dismiss defendant's second-stage postconviction petition, arguing that defendant's claims are legally and factually without merit. Defendant argued in response to the motion to dismiss, with the assistance of counsel, that his youth and its attendant circumstances were not adequately considered at sentencing, and that there was a strong rationale for extending the evolving scientific and legal principles regarding youthful offenders to

defendant, who was 19 years old at the time of the offense. Defense counsel made a comprehensive argument about defendant's childhood, the unfortunate circumstances that led defendant towards gang involvement, and the negative development of parts of the brain responsible for self-control and decisionmaking such that defendant was more like a juvenile than an adult at the time of the offense. Counsel attached to the response to the motion to dismiss an affidavit from defendant, the "White Paper on the Science of Late Adolescence" prepared by Massachusetts General Hospital for judges and attorneys, which discusses the subject of the brain and behavior of late adolescents, among other evidence. Defense counsel asked for a new sentencing hearing which would take into account the principles raised in the postconviction petition.

¶ 15     The trial judge asked defense counsel if any of the scientific evidence on youthful offenders applied to defendant particularly, observing that such evidence might apply in a general sense, but intimating that a more definite connection was required. Defense counsel responded that the evidence attached to the response to the motion to dismiss supports the argument that there were issues with the development of defendant's brain because of the early childhood trauma that defendant sustained. Counsel further told the judge: "We don't have an expert to analyze Mr. Dyse and, quite frankly, Judge, I don't know what the fruitfulness would...be of it, because it's not as though the expert would be able to give an opinion as to the cognitive development of Mr. Dyse" dating back to the time of the offense because the crimes were committed more than 23 years before the postconviction petition was filed. The State argued that defendant did not plead or provide any evidence that he should be treated as a juvenile, pointing out that all defendant's arguments and evidence spoke to the issue of youthful

offenders generally, but not to defendant's specific development or functioning as a juvenile as opposed to an adult.

¶ 16    The trial court granted the State's motion to dismiss defendant's postconviction petition. The trial court found that the Illinois Supreme Court's decision in *People v. Buffer*, 2019 IL 122327, ¶ 41 did not apply to defendant because defendant was 19 years old at the time of the offense and not a juvenile as required for the application of that case. The judge hearing the postconviction petition, who was the same judge who presided over defendant's trial and rendered defendant's sentence, stated he was well aware of defendant's age and the circumstances of defendant's life at the time he fashioned defendant's sentence. The trial court also noted that the evidence submitted in support of the petition did not speak to defendant specifically. The trial court concluded that there was nothing raised in the petition or in the evidence submitted during the postconviction proceedings that would change the judge's viewpoint about the propriety of the sentence he rendered in this case.

¶ 17    Defendant filed an appeal from the dismissal of his postconviction petition. Defendant argues on appeal that he did not receive effective assistance of postconviction counsel because his attorney failed to hire an expert to evaluate him and because his attorney failed to provide specific evidence about how the evolving science on maturity and brain development for youthful offenders applies to defendant, in particular.

¶ 18                                ANALYSIS

¶ 19    Defendant argues that he was denied effective assistance from his postconviction counsel. He argues, therefore, that we should reverse the second-stage dismissal of his postconviction petition and remand the case for further second-stage postconviction proceedings with the appointment of new counsel.

¶ 20    The Postconviction Hearing Act (725 ILCS 5/122–1 *et seq.*) provides a process by which a criminal defendant may challenge his or her conviction or sentence by filing a petition for relief in the circuit court. 725 ILCS 5/122–1 (West 2022). The Act provides for a three-stage process for adjudicating postconviction petitions. *People v. Harris,* 224 Ill. 2d 115, 125 (2007). At the first stage, the court independently assesses the merits of the petition. 725 ILCS 5/122–2.1 (West 2022). At the second stage, the circuit court must determine whether the petition and any accompanying documentation make a substantial showing of a constitutional violation. *People v. Edwards*, 197 Ill. 2d 239, 246 (2001). The circuit court's dismissal of a postconviction petition at the second stage is reviewed *de novo. People v. Rivera*, 2016 IL App (1st) 132573, ¶ 19.

¶ 21    The Constitution of the United States guarantees criminal defendants the right to effective assistance of counsel. U.S. Const. Amend. VI (West 2022). Thus, where a criminal defendant does not receive constitutionally adequate representation, he can seek relief to vindicate his constitutional right to counsel. *People v. Burnett*, 385 Ill. App. 3d 610, 614 (2008). However, a clear distinction has been drawn between the Sixth Amendment right to effective counsel during trial and on direct appeal and a postconviction petitioner's right to effective counsel in the collateral postconviction proceeding. See *People v. Custer*, 2019 IL 123339, ¶ 30. The Post-Conviction Hearing Act is a statutory creation, not a constitutional one. *People v. Bailey*, 2017 IL 121450, ¶ 17. As such, a postconviction petitioner is only entitled to the level of assistance required by the Post-Conviction Hearing Act, and the claims are not adjudicated under the standards applicable to Sixth Amendment ineffective assistance of counsel claims. *Custer*, 2019 IL 123339, ¶ 30.

¶ 22    As our supreme court recently reiterated, "[i]n a postconviction proceeding, there is no constitutional right to the assistance of counsel" and, instead, in a postconviction proceeding,

"the right to counsel is a matter of 'legislative grace.' " *People v. Addison*, 2023 IL 127119, ¶ 19. A postconviction petitioner is entitled only to the level of assistance from counsel granted to the petitioner by the Post-Conviction Hearing Act, which our supreme court has defined as a "reasonable level of assistance." *Id*. The "reasonable level of assistance" afforded petitioners under the Act is less than that afforded by the federal and state constitutions. *People v. Pendleton*, 223 Ill. 2d 458, 472 (2006). Commensurate with the lower reasonable assistance standard required of postconviction counsel, the Illinois Supreme Court Rule governing the standards for postconviction counsel, Rule 651, "sharply limits" counsel's duties to the defendant. *Custer*, 2019 IL 123339, ¶ 31.

¶ 23 Defendant's claim for ineffective assistance of counsel is based on his assertion that postconviction counsel was required to hire an expert and provide evidence tying the evolving science on maturity and brain development to defendant specifically. Defendant contends that his postconviction counsel's failure to adequately present his as-applied proportionate penalties claim, which required evidence relating how the evolving science on juvenile maturity and brain development applies to his specific facts and circumstances, deprived him of the reasonable assistance of counsel. Defendant concedes in this appeal that, as filed, his postconviction petition was factually and legally insufficient, but he argues that the insufficiency is attributable to his postconviction counsel.

¶ 24 Our Supreme Court has considered the issue of how the evolving science on juvenile maturity and brain development applies to young adults. See, *People v. House*, 2021 IL 125124, ¶ 24 (discussing the supreme court's decisions on the issue of applying juvenile sentencing laws to emerging adults). In *People v. Thompson*, the supreme court recognized that a young adult might be able to succeed in securing some of the sentencing protections afforded to minors under

an as-applied challenge. 2015 IL 118151, ¶ 38. Later, in *House*, the Court explained that, "by definition, as-applied constitutional challenges are dependent on the specific facts and circumstances of the challenging party and, [t]herefore, it is paramount that the record be sufficiently developed in terms of those facts and circumstances for purposes of appellate review." *House*, 2021 IL 125124, ¶ 27 (quoting *People v. Harris*, 2018 IL 121932, ¶ 39) (internal quotation marks omitted). The supreme court explained that the petitioner in that case "did not provide or cite any evidence relating to how the evolving science on juvenile maturity and brain development applied to his specific facts and circumstances." *House*, 2021 IL 125124, ¶ 29. Indeed, as defendant here suggests, the court found that postconviction petitioners were required to provide evidence concerning how the science concerning juvenile maturity and brain development applies to the adult petitioner specifically. *Id.*; see also *People v. Thompson*, 2015 IL 118151, ¶ 38. Defendant argues that his postconviction counsel was ineffective for failing to secure such evidence on defendant's behalf in order for defendant to defeat the State's motion to dismiss his postconviction petition.

¶ 25     Defendant's first contention is that postconviction counsel's filing of a certificate, in which counsel averred that he complied with the requirements of Illinois Supreme Court Rule 651(c), is rebutted by the record. Initially, defendant filed his postconviction petition *pro se* raising an as-applied proportionate penalties challenge to his 125-year sentence for crimes he committed when he was 19 years old. Defendant acknowledges that his petition did not contain any evidence concerning how the evolving science on brain development that applies to juveniles might apply to his specific facts or circumstances at the time he committed the murder.

¶ 26     Defendant points out that postconviction counsel did not amend or supplement his *pro se* petition, but instead filed a Rule 651(c) certificate asserting that defendant's *pro se* petition

adequately presented his claims. Postconviction counsel later filed a response to the State's motion to dismiss, attaching some evidence, but defendant claims that his counsel failed to adequately support his postconviction claim by: (1) failing to provide evidence relating how the science that applies to juveniles applied to defendant's specific facts and circumstances; (2) failing to hire an expert to evaluate defendant to provide such evidence; and (3) failing to request funding from the court to hire an expert.

¶ 27 The Post-Conviction Hearing Act contemplates that an attorney will ascertain the basis of a petitioner's claims, shape the petitioner's claims into an appropriate legal form, and present the claims to the court. *People v. Owens*, 139 Ill. 2d 351, 359 (1990). To ensure that a petitioner receives reasonable assistance from postconviction counsel, Rule 651(c) requires the record to contain a showing that counsel: (1) consulted with petitioner either by phone, mail, electronic means, or in person to ascertain petitioner's contentions of deprivation of constitutional rights, (2) examined the record of proceedings at trial, and (3) made any amendments to the petitions filed *pro se* that are necessary for an adequate presentation of petitioner's contentions. Ill. S. Ct. R. 651(c) (West 2022).

¶ 28 Postconviction counsel's "651(c) Certificate" from this case is quoted in full below.

"I, Dennis Brown, Assistant Cook County Public Defender, certify in accordance with Illinois Supreme Court Rule 651(c) that:

1. I have consulted with the petitioner, Kwantey Dyse, by mail and phone to ascertain his contentions of deprivations of constitutional rights;

2. I have obtained and examined the record (report of proceedings and common law record) from his trial, including sentencing; conducted legal research; and reviewed relevant case law related to petitioner's claims.

3. I have not prepared an amended or supplemental petition for post-conviction relief as the petitioner's previously-filed pro se petition for post-conviction relief adequately sets forth the petitioner's claims of deprivation of his constitutional rights."

Thus, in this case, postconviction counsel filed a certificate with the trial court specifically asserting that he complied with each requirement set forth in the Rule. Despite postconviction counsel's filing of the certificate and making the necessary attestations, defendant argues that his counsel failed to fulfill the statutory duties under Rule 651(c), which ensured that his postconviction petition would be dismissed.

¶ 29     Counsel's filing of a Rule 651(c) certificate creates a rebuttable presumption that counsel provided the required representation during second-stage proceedings. *People v. Perkins*, 229 Ill. 2d 34, 52 (2007). A defendant bears the burden of overcoming the presumption of reasonableness, by demonstrating his attorney's failure to substantially comply with the duties mandated by Rule 651(c). *People v. Profit*, 2012 IL App (1st) 101307, ¶ 19.

¶ 30     Defendant argues that the record rebuts the assertions made in counsel's Rule 651(c) certificate. Counsel made a statement in his certification that he had decided not to prepare an amended or supplemental petition for postconviction relief because the operative *pro se* petition "adequately sets forth the petitioner's claims of deprivation of his constitutional rights." Defendant takes issue with that statement and argues it is rebutted because counsel did not "adequately present [defendant's] proportionate penalties claim, which required evidence applying the evolving science on juvenile maturity and brain development to [defendant's] specific facts and circumstances." Defendant contends that counsel was required to secure the necessary evidence and amend the petition accordingly.

¶ 31    The record shows that, after being appointed in this case, counsel took steps to obtain the record and exhibits from defendant's trial. Counsel consulted with defendant about the petition and attended numerous court appearances. Counsel knew the applicable case law and was following the developments of a relevant case pending before our supreme court. Counsel wrote a comprehensive response to the State's motion to dismiss, attaching scientific research, an affidavit from defendant, and other evidence in support of defendant's claim. Counsel also argued knowledgeably against the State's motion to dismiss at the hearing and presented the evidence and argument in a persuasive manner and a manner that was favorable to defendant's claims, receiving praise from the trial judge.

¶ 32    Defendant's argument that counsel completely failed to provide evidence about how the science on the evolving young brain should apply to defendant specifically is a bit disingenuous. Postconviction counsel submitted as evidence one of the preeminent studies on the adolescent brain and its relation to decisionmaking and maturity in the context of criminality. The article specifically discusses late adolescents (ages 18-21). The article discusses the impact of many of the factors that defendant claims should entitle him to be treated as a juvenile for purposes of sentencing: childhood adversity, childhood trauma, peer pressure, and other social stressors, among other factors. Defendant made attestations in his affidavit that demonstrated he experienced some of the negative experiences set forth in the article. Counsel put in effort and made cogent arguments in the response to the motion to dismiss and at the hearing on the motion to dismiss in an attempt to tie defendant's life circumstances to the matters discussed in the article and to argue that defendant, specifically, should be treated as a juvenile rather than as an adult for sentencing purposes. Counsel also argued at the hearing on the motion to dismiss that the evidence attached to the responsive filing supported the argument that there were issues with

the development of defendant's brain specifically because of the early childhood trauma that defendant experienced.

¶ 33    Defendant's argument on appeal essentially boils down to a claim that postconviction counsel could only have met the reasonable assistance standard by retaining an expert and offering an expert opinion to the postconviction court to tie scientific evidence on the evolving brain to defendant specifically. We decline to construe the reasonable assistance standard for postconviction claims in such a broad manner. If we were to rule in defendant's favor on this argument, we would be holding that postconviction counsel is ineffective unless counsel hires an expert to examine a claim by any young adult asking to be treated as a juvenile, even when postconviction counsel has reviewed all the relevant information and expressly stated a belief on the record that hiring an expert in the given case would not be fruitful. Were we to do so, we would be improperly holding postconviction counsel to "a higher standard of professional conduct for postconviction counsel than is imposed by Rule 651(c)." See *Custer*, 2019 IL 123339, ¶ 38.

¶ 34    Postconviction counsel's filing of a Rule 651(c) certificate created the presumption that reasonable assistance was rendered. *Perkins*, 229 Ill. 2d at 52. Defendant attempts to overcome that presumption by speculating that counsel could have found some unidentified expert who would have provided the evidence needed to go forward on the postconviction petition. But counsel's representational requirements in a postconviction proceeding are "sharply limit[ed]" in comparison to the Sixth Amendment's requirements for the right to effective assistance of counsel. *Custer*, 2019 IL 123339, ¶ 34. Postconviction counsel's duties "do not include bolstering every claim presented in a petitioner's *pro se* postconviction petition, regardless of its legal merit, or presenting each and every witness or shred of evidence the petitioner believes

could potentially support his position." *Id*. at ¶ 38. Indeed, all that counsel must do to comply with Rule 651(c) is to have: (1) consulted with petitioner either by phone, mail, electronic means, or in person to ascertain petitioner's contentions of deprivation of constitutional rights, (2) examined the record of proceedings at trial, and (3) made any amendments to the petitions filed *pro se* that are necessary for an adequate presentation of petitioner's contentions. Ill. S. Ct. R. 651(c) (West 2022). Here, postconviction counsel complied with all the Rule's requirements.

¶ 35    Defendant states that, "[i]t is clear that a 'neurologist, neuropsuchologist [*sic*], neurobiologist, or some other expert' is needed to provide the type of evidence necessary to adequately present an as-applied proportionate penalties challenge based on the evolving science on juvenile brain maturity and brain development." (Citing *People v. Crockett*, 2023 IL App (1st) 220128-U, ¶¶46-48). Defendant contends it must follow that, "at second stage proceedings, it is incumbent upon post-conviction counsel to provide this [expert] evidence showing how the science applies to a specific defendant's facts and circumstances."

¶ 36    None of our cases or cases from our supreme court which interpret the requirements of Rule 651(c) oblige postconviction counsel to seek out experts to gather information on the petitioner's behalf. See *People v. Williams*, 186 Ill. 2d 55, 61 (1999) (it is not postconviction counsel's duty to seek out experts to support a petitioner's claims or to conduct a fishing expedition to find supporting evidence; that obligation is on the petitioner); *People v. Mendoza*, 402 Ill. App. 3d 808, 817 (2010) ("Rule 651(c) does not impose upon postconviction counsel a legal duty to actively search for sources outside the record that might support general claims raised in a post-conviction petition. If it is the defendant's claim that admissible evidence missing from his petition exists outside the record, there is no duty on postconviction counsel to discover that evidence.") (citing *People v. Johnson*, 154 Ill. 2d 227, 247 (1993)) (internal

quotation marks omitted); see also *People v. Garcia*, 405 Ill. App. 3d 608, 625 (2010). Accordingly, we conclude defendant has not demonstrated that he received ineffective assistance from his postconviction counsel.

¶ 37    Rule 651(c) does not require counsel to seek out expert opinions in order to be reasonably effective under the Post-Conviction Hearing Act. *People v. Williams*, 186 Ill. 2d at 61. We lack authority to expand or enlarge a Supreme Court Rule or to add requirements thereto. See *People v. Ruiz*, 2019 IL App (1st) 152157, ¶ 36 (appellate court cannot overrule or ignore a Supreme Court Rule); *Price v. Philip Morris, Inc.*, 341 Ill. App. 3d 941, 945 (2003) (vacated on other grounds) ("Neither the circuit court nor this court may ignore or deviate from the requirements imposed by supreme court rule."); *People v. Hawkins*, 14 Ill. App. 3d 549, 550 (1973) (appellate court is "without authority to modify or enlarge" a Supreme Court Rule). Based on the prevailing law regarding assistance of counsel in postconviction proceedings, defendant has failed to show that postconviction counsel failed to provide reasonable assistance.

¶ 38                                  CONCLUSION

¶ 39    Accordingly, we affirm.

¶ 40    Affirmed.