2022 IL App (1st) 190258-U

SIXTH DIVISION
July 29, 2022

No. 1-19-0258

NOTICE: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Respondent-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 06 CR 11543 |
| | ) | |
| BENJAMIN JOHNSON, | ) | Honorable |
| | ) | Carol M. Howard, |
| Petitioner-Appellant. | ) | Judge Presiding. |

JUSTICE MIKVA delivered the judgment of the court.
Justices Oden Johnson and Mitchell concurred in the judgment.

**O R D E R**

¶ 1    *Held*:    Judgment of the circuit court dismissing defendant's postconviction petition at the second stage is reversed and remanded for further second-stage proceedings where defendant's postconviction counsel failed to provide reasonable representation and it is impossible to determine on this record whether defendant was prejudiced by this failure.

¶ 2    Defendant Benjamin Johnson appeals from the second-stage dismissal of his petition for relief filed pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2020)). He argues that his case should be remanded for further proceedings because he was denied his right to reasonable assistance of counsel where his privately retained postconviction attorney

failed to provide reasonable representation. We agree that the record supports Mr. Johnson's assertion that his attorney's performance failed to meet the standard of reasonable representation. We also agree that since it is not possible to determine on this record whether Mr. Johnson suffered prejudice from his attorney's deficient performance, we should exercise our power, pursuant to Illinois Supreme Court Rule 615(b), to remand this case for further postconviction proceedings.

¶ 3                                    I. BACKGROUND

¶ 4      Following a September 2009 jury trial, Mr. Johnson was found guilty on charges of home invasion, aggravated kidnapping, armed robbery, aggravated vehicular hijacking, aggravated fleeing, escape, and two counts of aggravated criminal sexual assault. Mr. Johnson's sole defense was that he was insane at the time of these offenses. This defense was rejected by the jury. He was sentenced to 80 years in prison. We provided a full recitation of the facts established at Mr. Johnson's trial in our decision on direct appeal. See *People v. Johnson*, 2012 IL App (1st) 100372-U. In that appeal, Mr. Johnson argued that, among other things, the jury's rejection of his insanity defense was against the manifest weight of the evidence. *Id.* We affirmed. *Id.*

¶ 5      Mr. Johnson subsequently retained private counsel to represent him in postconviction proceedings. The adequacy of his representation in that collateral proceeding is the subject of this appeal.

¶ 6                               A. First-Stage Proceedings

¶ 7      On December 7, 2012, Mr. Johnson filed his postconviction petition through retained counsel. The central argument in the petition was that his trial counsel was ineffective for relying on the expert testimony of psychiatrist Linda Grossman, whose conclusions were noncommittal on the determinative question of whether Mr. Johnson lacked the capacity to appreciate the criminality of his conduct. We summarized Dr. Grossman's trial testimony as follows in our

decision on direct appeal:

"Dr. Linda Sue Grossman was accepted as an expert witness in the field of forensic psychology and mental illnesses. Dr. Grossman was hired by the court as an independent evaluator and interviewed defendant twice. From her review of his medical records, Dr. Grossman concluded that defendant suffers from an intermittent psychotic disorder that is responsive to medication. Dr. Grossman testified that in her report, she had written that defendant was legally sane but mentally ill at the time he committed the crimes against [complainant]. She stated that she was rushed when she wrote the report but that, since that time, she had thought more about it and could not rule out that defendant was insane at the time. She explained that a number of his behaviors during the assault suggest the possibility that defendant may not have been aware of the criminality of what he was doing. Dr. Grossman further explained that some of defendant's behaviors suggested that he might have been thinking the encounter was more consensual than it actually was, such as comments he made that he was not raping [complainant] and that she liked it, talking with her afterward as though nothing bad had happened, telling her to put her arm around him, and appearing to be solicitous and almost kind at times as they left the apartment. Dr. Grossman concluded that she was not willing to say within a reasonable degree of medical and psychiatric certainty that defendant was insane, but she was also not willing to exclude that possibility. On cross-examination, Dr. Grossman acknowledged that in her report, she stated that defendant's actions at the time of the crime were consistent with an ability to appreciate the criminality of his alleged conduct, such as fleeing from the police. However, she stated that fleeing from the police could also indicate that a person is paranoid. Dr. Grossman again concluded that she could not say that defendant was insane, but she also

could not rule it out." *Id.* ¶ 31.

¶ 8     Mr. Johnson argued in his petition that, because Dr. Grossman refused to opine that he was insane at the time of these crimes, trial counsel should have called additional lay and expert witnesses, and that the failure to do so "fatally undermined" his insanity defense. On March 8, 2013, the circuit court advanced the petition to the second stage of the postconviction process.

¶ 9                                   B. Second-Stage Proceedings

¶ 10    During the next several years, Mr. Johnson's postconviction case cycled through an assortment of attorneys from the same law firm. At one appearance on November 8, 2013, one attorney from the firm candidly explained to the court that he lacked postconviction experience. When the court asked the attorney how much more time he would need to file a Rule 651(c) certificate on a related case of Mr. Johnson's on which the court had appointed the firm, the attorney remarked, "I'm not making any representations to the Court at this point, your Honor. I don't know what I need to put in this 651(c) disclosure. I'm a personal injury lawyer. I've never done criminal stuff, so I'm unfamiliar with these sections, your Honor, and I apologize about that."

¶ 11    On January 13, 2017, nearly four years after the circuit court had advanced Mr. Johnson's petition to the second stage, postconviction counsel filed an amended petition citing numerous additional arguments for why Mr. Johnson's trial counsel was ineffective. According to the amended petition,

   "[t]rial counsel prejudiced the petitioner and violated petitioner's right to due process of

   law by stipulating to qualifications of experts in forensics, stipulating to the chain of

   custody of DNA material, stipulating to the scientific validity of the procedures employed

   by forensic examiners of the scientific accuracy of the results of testing; the failure of trial

   counsel to present a motion within 30 days to reconsider the sentence of petitioner; the

neglect of trial counsel to follow the instructions of his client to file a notice of appeal; the neglect of trial counsel to file a notice of appeal after advising petitioner that he would so file; failure to obtain an updated or another psychiatric report or another psychiatrist to render an opinion; and trial counsel neglected to follow, his client's instructions to file a notice of appeal and neglected to file the notice of appeal after agreeing that he, trial counsel would do so."

¶ 12    In the body of the amended petition, counsel did not substantiate any of Mr. Johnson's claims. Counsel also failed to attach to the amended petition any affidavits or other documentary evidence from outside the trial record.

¶ 13    On June 9, 2017, the State filed a motion to dismiss, asserting that all the allegations of ineffective assistance of counsel were barred by waiver and *res judicata*, because they had been brought or could have been brought on direct appeal. The State further argued that even if the arguments were not barred, they must fail because none came close to satisfying the requirements of *Strickland v. Washington*, 466 U.S. 668 (1984), as all the challenged decisions made by trial counsel could be characterized as reasonable decisions of trial strategy. The State also pointed out that the claims in the petition regarding trial counsel's failure to file a notice of appeal were unfounded and contradicted by the record, as trial counsel did file a notice of appeal in this case.

¶ 14    On October 27, 2017, postconviction counsel filed a reply to the State's motion arguing that the *Strickland* standard had been satisfied. She then filed a supplemental reply on January 13, 2017, responding to the State's wavier and *res judicata* arguments, asserting that Mr. Johnson was "not looking to relitigate a new cause of action, but raise issues that a competent, capable attorney would have advanced." Counsel did not attach affidavits to either of these filings.

¶ 15    At the hearing on the motion to dismiss, held on July 12, 2018, the State reiterated its

position that any issues related to Mr. Johnson's mental health were barred by *res judicata*, as those issues were dealt with "in open court, they are all in the record and that was an issue on direct appeal." The State then proceeded to discuss the merits of Mr. Johnson's various ineffective assistance claims, arguing that they all concerned issues of trial strategy that could not satisfy *Strickland*. Finally, the State explained that, even putting aside the issue of *res judicata*, the allegation that Mr. Johnson's trial counsel was ineffective for failing to call more compelling witnesses to testify to his mental condition was not supported by anything in the record and Mr. Johnson had failed to present any affidavits that would "contradict anything in the record." Absent these affidavits, the State contended, Mr. Johnson was essentially asking the court to speculate "as to what witnesses would say or who those witnesses would even be," which was not sufficient to warrant further advancement in the postconviction process.

¶ 16    Mr. Johnson's postconviction counsel responded by saying that Mr. Johnson faced a 78-count indictment and asserting that his trial attorney was unprepared to present an affirmative defense of insanity. She did not respond directly to the State's arguments about trial strategy or the lack of affidavits. Instead, she said to the court that "[t]he *Strickland* case as you know is a criminal case, 1994 case which is still good law today. And it basically talked about the—there is two prongs to the test; the *Strickland* test, counsel's performance has to be deficient and because of counsel's deficiency, the defendant is deprived of a fair trial. And that was exactly the case here, Your Honor."

¶ 17    At this point, the court interrupted counsel, attempting to "focus this discussion." The court asked for an explanation for why Mr. Johnson's amended petition claimed that his trial counsel was ineffective for failing to file a notice of appeal when that claim "appears to be meritless" as "there was a direct appeal taken in this case and the appellate court affirmed it." Counsel responded

by discussing Mr. Johnson's mental health issues.

¶ 18     The discussion then moved to Mr. Johnson's claim that his counsel was ineffective for relying on Dr. Grossman's testimony. The court asked postconviction counsel:

"Have you, in preparing this post-conviction petition *** identified another expert, have you attached the affidavit of another expert to this petition explaining—in which this other expert explains his or her findings that the defendant was insane at the time of the offense and why they reached that conclusion? Have you made a record that could lead this Court to conclude that but for the defense attorney's failure to present the proper expert testimony the outcome would have been different? What you're doing is questioning the testimony of the expert presented. But you haven't presented any other testimony indicating that the outcome would have been different if a different expert would have testified."

¶ 19     Counsel responded by saying: "Your Honor, what we've shown here is that the totality of the items in the trial itself and the posttrial prejudiced the defendant, and prejudiced the defendant to the extent that the defendant wasn't—did not receive a fair trial." The court then addressed the remaining claims about trial counsel's decisions related to stipulations, asking again if there were any affidavits supporting Mr. Johnson's claims. Counsel's response was that there were "only the certified transcripts of the trial itself."

¶ 20     In its concluding remarks, before the motion was taken under advisement, the State summarized the situation as follows:

"Counsel can repeatedly say that the defense attorney didn't do a good job in this case; however, under the Post-Conviction Act which is why we're here *** [t]here must be something shown outside of the record for this Court to move it to a third stage. There

must be something. There is nothing presented in counsel's petition that is outside the record."

¶ 21   On August 30, 2018, the court issued a written order granting the State's motion to dismiss. The court addressed each of Mr. Johnson's claims of ineffective assistance of counsel. Regarding the testimony of Dr. Grossman and the alleged failure to call additional witnesses that could testify to Mr. Johnson's mental state, the court found that the claims in the petition were "entirely conclusory" and not legally sufficient under the Act. The court explained that such claims must be supported by "affidavits, records, or other evidence" and, citing our supreme court in *People v. Collins*, 202 Ill. 2d 59, 66 (2002), the court noted that the failure to include these necessary items, or explain their absence, is " 'fatal' to a petition for post-conviction relief and may alone justify the summary dismissal of the petition." Based on the lack of supporting evidence, the court concluded that Mr. Johnson did not make the requisite factual showing to justify further proceedings under the Act.

¶ 22                                    C. Failure to Return the Record

¶ 23   In addition to counsel's performance during postconviction proceedings, as outlined above, this court has learned that after Mr. Johnson's postconviction petition was dismissed, his counsel failed to return the record of his trial to the Clerk of the Circuit Court of Cook County. This was brought to our attention in a motion filed by the Office of the State Appellate Defender (OSAD) in this case on April 27, 2022, asking this court to order the court reporters to re-transcribe the report of proceedings for that trial. OSAD alleged in their motion that Mr. Johnson's postconviction counsel had withdrawn the now-missing record from the clerk's office on November 29, 2012, and never returned it. When OSAD contacted the law firm that had represented Mr. Johnson in this postconviction proceeding to try to get the record, the firm

informed OSAD that it had been destroyed in a fire in 2020. This failure to return the court file so that Mr. Johnson could pursue his appellate remedies is relevant insofar as it provides additional context for Mr. Johnson's assertion that the law firm representing him was unaware of its most basic responsibilities as postconviction counsel.

¶ 24                            II. JURISDICTION

¶ 25    Mr. Johnson's petition was dismissed on August 30, 2018. Late notice of appeal from the second-stage dismissal was allowed on February 21, 2019. We have jurisdiction over this appeal pursuant to article VI, section 6, of the Illinois Constitution (Ill. Const. 1970, art. VI, § 6) and Illinois Supreme Court Rule 606 (eff. July 1, 2017) and Rule 651(a) (eff. July 1, 2017), governing appeals from final judgments in postconviction proceedings.

¶ 26                            III. ANALYSIS

¶ 27    The Act establishes procedures by which an incarcerated criminal defendant may challenge his conviction or sentence based on a substantial deprivation of his state or federal constitutional rights. 725 ILCS 5/122-1(a)(1) (West 2020); *People v. Caballero*, 228 Ill. 2d 79, 83 (2008). A postconviction proceeding is a collateral attack on the trial court proceedings. *People v. Petrenko*, 237 Ill. 2d 490, 499 (2010). Its scope is limited to constitutional issues that were not, and could not have been, previously adjudicated. *People v. Whitfield*, 217 Ill. 2d 177, 183 (2005).

¶ 28    Postconviction proceedings occur in three stages. *People v. Gaultney*, 174 Ill. 2d 410, 418 (1996). At the first stage, the circuit court determines, without any input from the State, whether the defendant's petition is frivolous or patently without merit. 725 ILCS 5/122-2.1(a)(2) (West 2020); *Gaultney*, 174 Ill. 2d at 418. To survive dismissal at this stage, a petition need only present the "gist" of a constitutional claim. *Gaultney*, 174 Ill. 2d at 418. At the second stage, the circuit court may appoint counsel to represent the defendant and file an amended petition, and the State

must either answer or move to dismiss the petition. 725 ILCS 5/122-4, 122-5 (West 2020); *Gaultney*, 174 Ill. 2d at 418. "Where the State seeks dismissal of a post-conviction petition instead of filing an answer, its motion to dismiss assumes the truth of the allegations to which it is directed and questions only their legal sufficiency." *People v. Miller*, 203 Ill. 2d 433, 437 (2002).

¶ 29     A petition should be dismissed at the second stage when its allegations of fact, "liberally construed in favor of the petitioner and in light of the original trial record," fail to make a "substantial showing" of a constitutional violation. *People v. Coleman*, 183 Ill. 2d 366, 382 (1998). If such a showing is made—*i.e.*, if support for the allegations exists in the record or in accompanying affidavits—the petition advances to a third-stage evidentiary hearing on the merits. 725 ILCS 5/122-6 (West 2018); *People v. Silagy*, 116 Ill. 2d 357, 365 (1987). We review the dismissal of a postconviction petition at the second stage *de novo*. *People v. Sanders*, 2016 IL 118123, ¶ 31.

¶ 30     On appeal, Mr. Johnson argues that that the second-stage dismissal of his petition should be reversed and this case remanded for new second-stage proceedings because he was denied his right to reasonable assistance of counsel where his retained postconviction counsel failed to attach affidavits or any other evidence to support the claims in his petition, failed to explain the significance of proposed witnesses, and demonstrated a complete unfamiliarity with the record and the requirements outlined in the Act.

¶ 31     As our supreme court explained in *People v. Custer*, 2019 IL 123339, ¶ 30, because the rights afforded to postconviction petitioners derive from a legislative grant rather than from a constitutional entitlement, defendants pursuing relief in the postconviction system are not entitled to effective assistance of counsel. *Id.* Rather, they are entitled only to a "reasonable level" of assistance of counsel, a standard that is "significantly lower than the one mandated at trial by our

state and federal constitutions." *Id.*

¶ 32    Where counsel has been appointed to represent an indigent postconviction petitioner, Illinois Supreme Court Rule 651(c) (eff. July 1, 2017) sets out the basic responsibilities for such representation. That rule requires that the postconviction record:

> "shall contain a showing, which may be made by the certificate of petitioner's attorney, that the attorney has consulted with petitioner by phone, mail, electronic means or in person to ascertain his or her contentions of deprivation of constitutional rights, has examined the record of the proceedings at the trial, and has made any amendments to the petitions filed *pro se* that are necessary for an adequate presentation of petitioner's contentions." Ill. S. Ct. R. 651(c) (eff. July 1, 2017).

Our supreme court has recognized that by filing a Rule 651(c) certificate, "[p]ostconviction counsel may create a rebuttable presumption that reasonable assistance was provided." *Custer*, 2019 IL 123339, ¶ 32

¶ 33    In cases like this one, however, where postconviction counsel has been retained rather than appointed, the specific requirements of Rule 651(c) do not apply. *People v. Cotto*, 2016 IL 119006, ¶ 41; *People v. Richmond*, 188 Ill. 2d 376, 382 (1999). But Mr. Johnson's retained counsel also had an obligation to provide reasonable assistance. See *Cotto*, 2016 IL 119006, ¶¶ 41-42 (holding that all postconviction petitioners are owed reasonable assistance, regardless of whether they have retained or appointed counsel, and describing Rule 651(c) as "merely a vehicle for ensuring a reasonable level of assistance" but not "the only guarantee of reasonable assistance."). While our supreme court has not explicitly provided a standard for how to gauge whether reasonable assistance was provided where Rule 651(c) is inapplicable, we discussed this issue at length in *People v. Zareski*, 2017 IL App (1st) 150836, ¶¶ 58-61.

¶ 34 In *Zareski*, and in cases following it, we have used a *Strickland*-like analysis in these situations. We examine both the attorney's performance and whether any performance deficiency prejudiced the postconviction petitioner. *Id.* ¶ 59; see also *People v. Soto*, 2022 IL App (1st) 192484, ¶ 162. We noted that the assessment of both counsel's performance *and* whether that performance prejudiced the defendant is "well-established within Illinois criminal law, familiar to both the courts and attorneys" and "has been used to evaluate counsel in other Illinois non-criminal proceedings, such as involuntary commitment or parental rights terminations." *Zareski*, 2017 IL App (1st) 150836, ¶ 59. It also advances the interest of judicial economy by "prevent[ing] pointless remands to trial courts for repeated evaluation of claims that have no chance of success." *Id.* After considering the interests involved and reviewing how other jurisdictions deal with the issue, we concluded that "in evaluating the performance of postconviction counsel, whether the petitioner was prejudiced (at a minimum) should be part of the inquiry." *Id.* ¶ 60. In evaluating prejudice, we follow the *Strickland* standard and inquire whether there is at least a reasonable probability of a different outcome on the petition, had counsel provided reasonable assistance. *Id.* ¶¶ 63-75.

¶ 35 Here, relying primarily on *Zareski*, the State argues that Mr. Johnson's petition was properly dismissed because, even if he could show that his counsel's performance was unreasonable—which the State does not concede he can demonstrate—his claim would still fail because he cannot show how he was prejudiced by such performance. The problem with the State's argument, however, is that straightforward application of *Zareski* is impossible in this case due to the emptiness of the record, an emptiness which clearly stems, at least in part, from Mr. Johnson's attorney's performance.

¶ 36 In representing a postconviction petitioner, it is essential that counsel provide, or at least attempt to provide, evidentiary support for the claims asserted in a petition. The Act is clear that a

petition "*shall* have attached thereto affidavits, records, or other evidence supporting its allegations or *shall* state why the same are not attached." (Emphases added.) 725 ILCS 5/122-2 (West 2020). None of the filings submitted by Mr. Johnson's counsel in this case satisfied this fundamental criterion. Affidavits were never attached, and no satisfactory explanation was ever provided for their absence. As the circuit court inquired:

> "Have you *** identified another expert, have you attached the affidavit of another expert to this petition explaining—in which this other expert explains his or her findings that the defendant was insane at the time of the offense and why they reached that conclusion? Have you made a record that could lead this Court to conclude that but for the defense attorney's failure to present the proper expert testimony the outcome would have been different?"

These questions went unanswered.

¶ 37    In *People v. Johnson*, 154 Ill. 2d 227, 241 (1993), our supreme court explained that where a postconviction petition is unsupported by affidavits or other documents, a reviewing court "may reasonably presume that post-conviction counsel made a concerted effort to obtain affidavits in support of the post-conviction claims, but was unable to do so." However, the court also implied this presumption can be rebutted where the record flatly contradicts that a "concerted effort" was made. *Id.*; see also *People v. Waldrop*, 353 Ill. App. 3d 244, 250 (2004). Here, the record suggests that no such concerted effort was ever made in this case. Not only did counsel provide no evidentiary support for any of the claims asserted in the petition, it appears that counsel was not even aware that this was an expectation.

¶ 38    Based on counsel's pleadings, statements, unreasonable delays, and general performance throughout, it is quite apparent that counsel was not familiar with the record or the basic

requirements of the Act. Counsel's unfamiliarity with the record can be inferred from the inclusion of the erroneous assertion in Mr. Johnson's petition relating to his trial attorney's alleged failure to file a notice of appeal, an assertion which is flatly contradicted by the procedural history of this case. Counsel's ignorance of the basic structure of the Act bleeds through the transcript of the hearing on the State's motion to dismiss, where counsel seemed utterly bewildered and unable to respond whenever the court asked about the lack of affidavits.

¶ 39    Particularly where, as here, the claim being asserted is ineffective assistance of trial counsel, postconviction counsel had the opportunity to provide evidentiary support that is not in the trial record to demonstrate how trial counsel's failures prejudiced the defendant's rights and impacted the outcome at trial. Instead, postconviction counsel in this case relied strictly on the trial record itself which walked Mr. Johnson right into the State's argument that every issue raised in the postconviction petition was barred because it could have been raised on direct appeal. Considering the multitude of errors committed by postconviction counsel in this case, it is clear the assistance provided to Mr. Johnson in his postconviction proceeding was not sufficient to meet even the somewhat relaxed standard of reasonable assistance.

¶ 40    The primary allegation in Mr. Johnson's petition is that his trial counsel was ineffective for relying on the testimony of Dr. Grossman and that he should have called a different expert witness who would have provided evidence in support of his insanity defense. As the circuit court pointed out, because counsel provided no information about whether an alternative expert witness existed and what that witness would have been able to testify to, it was not possible to determine if trial counsel could have changed the outcome of the trial.

¶ 41    At this stage of the proceeding, we still have no answer to that question because postconviction counsel attached nothing that demonstrates either that such a witness exists or that

counsel made a reasonable attempt to find such a witness and could not. In other words, as Mr. Johnson argues on appeal, because of the deficiencies of his postconviction counsel, we simply cannot tell on this record whether the outcome might have been different if Mr. Johnson had received reasonable postconviction representation. Thus, we cannot determine whether Mr. Johnson was prejudiced by the lack of reasonable assistance.

¶ 42 Mr. Johnson argues that the proper course of action here is to remand pursuant to the specific power given to this court under Illinois Supreme Court Rule 615(b) (eff. Jan. 1, 1967), which allows this court to "modify" the judgment or "any or all of the proceedings subsequent to or dependent upon the judgment or order from which the appeal is taken." Mr. Johnson points to this court's opinion in *People v. Jackson*, 2021 IL App (1st) 190263, ¶ 46, where we relied on this discretionary power to "vacate the trial court's order and remand for further second-stage proceedings so that postconviction counsel may further amend and support the petition." In that case, as in this one, remand was warranted because regardless of whether the claims raised in the postconviction petition had merit, it was simply not possible to determine what would have occurred at the second stage if reasonable assistance had been provided. *Id.* ¶ 47. As the court noted, "the emptiness of the record created by postconviction counsel is [the] defendant's whole point on appeal." *Id.* ¶ 45.

¶ 43 We agree with Mr. Johnson, that, as in *Jackson*, a remand is appropriate in this case. See also *People v. Cooper*, 2021 IL App (1st) 190022 (remanding the case under Rule 615(b) for the limited purpose of holding a hearing on whether postconviction petition was timely put into the mailbox). As in *Jackson,* we believe that in order to properly assess Mr. Johnson's claim, this case must be remanded to the circuit court for additional second-stage proceedings during which new counsel can supplement the postconviction record with any additional evidence or affidavits that

it believes provides support for Mr. Johnson's postconviction petition.

¶ 44    As a final matter we address OSAD's motion referenced above (*supra* ¶ 23), asking that we order the court reporters to re-transcribe the report of proceedings issued for Mr. Johnson's direct appeal. We directed the State to file a response to this motion and then issued an order, taking the motion with the case.

¶ 45    OSAD's motion states that, in its opening brief on this appeal, it had relied on the facts as laid out in this court's Rule 23 order in *Johnson,* 2012 IL App (1st) 100372-U, which it had deemed "adequate" for the appeal. However, in its response brief the State asserted that "petitioner failed to provide the trial record on appeal" and that any doubts arising from this incomplete record must be resolved against Mr. Johnson, as the appellant. OSAD asked that the proceedings be re-transcribed free of charge, so that there was a "complete record" for this court. The State's response was that it had no objection but that it reserved the right to file supplemental or substitute briefing, if deemed necessary.

¶ 46    At this point, the court sees no basis for granting that motion and compelling the production of a new trial record. Because no specifics have yet been provided by postconviction counsel as to what trial counsel should have done to adequately present the insanity defense, the need for an in-depth review of the trial record remains speculative. Therefore, we deny the motion at this time. However, this denial is without prejudice to counsel for Mr. Johnson renewing this motion if a more specific need for the trial transcripts arises. We also note that where, as here, those transcripts no longer exist through no fault of Mr. Johnson, Mr. Johnson cannot fairly be accused of failing to provide this court with a complete record because the transcripts are not included.

¶ 47                                IV. CONCLUSION

¶ 48    For the reasons stated herein, we vacate the second-stage dismissal and remand this case

- 16 -

to the circuit court with directions for further second-stage proceedings.

¶ 49     Vacated and remanded.